UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Shaun Thompson,
      Plaintiff

    v.                                      Case No. 19-cv-513-SM
                                             Opinion No. 2019 DNH 140
Paul G. White Tile Company, Inc.,
      Defendant


**O R D E R**


Shaun Thompson brings this action against his former employer, Paul G. White Tile Company ("WTC"), seeking damages for wrongful termination (count one) and unlawful non-payment of wages (count two).  See generally N.H. Rev. Stat. Ann. ("RSA") ch. 275.  WTC moves to dismiss both claims advanced in Thompson's complaint, saying they fail to state the essential elements of viable causes of action.  See Fed. R. Civ. P. 12(b)(6).  Specifically, WTC asserts that: (a) Thompson's wage claim is barred by the statute of frauds; and, therefore, (b) "if there is no basis, due to the application of the statute of frauds, for the [wage claim], there can be no wrongful termination claim springing from it."  Defendant's Reply Memorandum (document no. 6) at 4.  For the reasons discussed, defendant's motion to dismiss is denied.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

**Background**

Liberally construing the factual allegations of the complaint in Thompson's favor - as the court must at this juncture - the relevant background is as follows. In August of 2016, WTC hired Thompson as the Division Manager of its Newmarket, New Hampshire division. The terms of his employment contract were oral; they were not reduced to writing. He alleges that he was promised an annual base salary of $185,000 plus a "commission of 10% of the gross profits made by the Newmarket division." Complaint at para. 6. While the precise

conditions under which Thompson's commission would be earned (and paid) are unclear, it is fair to infer that the parties contemplated paying Thompson his commission on an annual basis. So, for example, he would be paid for the commission earned during fiscal year 1 at some point in year 2 (after the company's gross profits for year 1 had been fully calculated). The court will also assume that the terms of Thompson's employment agreement with WTC provided that, should his employment terminate for any reason (whether initiated by him or by WTC), Thompson would be entitled to ten percent of the gross profits earned by the Newmarket division proportional to the time worked in that year. So, if he quit or was fired prior to the close of a fiscal year, he would nevertheless be entitled to a prorated share of 10 percent of the gross profits earned by his division.[1]

---

[1] Neither party describes the specific terms of Thompson's oral employment contract. It is conceivable that the parties intended that he would only earn his commission upon successful completion of an entire fiscal year. That is, he would have to remain employed on the first day of a new fiscal year (say, January 1), in order to earn the commission for the prior year. Of course, that means if he were fired (or quit) on December 30, he would forfeit the entire commission for that year. At this point, it remains unclear. But, given the standard of review and the court's obligation to construe the factual allegations of the complaint in the light most favorable to Thompson, the court has assumed that his commission was earned (i.e., vested) on an ongoing basis.

The complaint does not discuss what, if any, commission Thompson earned (or was paid) for his work during 2016. The problems between the parties seem to have arisen toward the end of 2017. Thompson says he and WTC disputed the amount to which he was entitled for that year, and he ultimately agreed to accept (and WTC paid him) $20,000. Toward the end of 2018, he claims the parties again disputed how much commission he had earned for that year. And, says Thompson, in order to avoid paying him any commission at all for that year, WTC unlawfully terminated his employment on December 29, 2018. WTC did not pay him a commission for 2018 and, according to Thompson, it also failed to properly pay the salary he earned during his final weeks of work at the company.

**Discussion**

WTC asserts that both of Thompson's claims - that is, his wage claim and his wrongful termination claim - are barred by New Hampshire's statute of frauds. See RSA 506:2. Broadly speaking, the statute of frauds renders oral contracts that cannot be performed within one year unenforceable.

The parties agree that Thompson was an employee-at-will. Typically, at-will employment agreements can be terminated by either party for any lawful reason (or without reason) at any

4

time.  Such agreements may, then, be completed without breach within one year.  Consequently, it is well established that at-will employment agreements are not subject to the statute of frauds.  See, e.g., Toomire v. Town & Country Janitorial Servs., 2002 DNH 034, 2002 WL 140648, at *7 (D.N.H. Jan. 31, 2002); Ives v. Manchester Subaru, Inc., 126 N.H. 796, 799 (1985).

But, says WTC, its (alleged) promise to pay Thompson an annual commission of ten percent (10%) of the company's gross profits is within the scope of the statute of frauds.  According to WTC, because Thompson's commission could only be calculated at some point after the close of each fiscal year, that calculation necessarily could not be completed within one year of the date on which the parties entered into their employment agreement.

> A bonus or incentive compensation payable to Plaintiff based upon the full calendar year profitability for 2017, from an agreement entered in August 2016, could only be calculated after December 31, 2017.  This is 18 months after hire.  The calculation of the annual profitability for 2018, which could not be performed until after December 31, 2018, is even more attenuated – [30] months after the oral promise.

Defendant's Memorandum (document no. 4) at 8.

5

Given the lack of evidence concerning the details of Thompson's employment agreement with WTC - in particular, the conditions under which he would earn his commission - it cannot be determined that his complaint fails to state a viable claim. Typically, the statute of frauds does not apply to oral commission agreements with employees at will when those agreements contemplate payment of commissions earned during the period of employment. That is true even if payment of the commission may be made beyond one year. So, for example, under New York's statute of frauds:

> [W]hen the employment relationship is terminable within a year and <u>the measure of compensation has become fixed and earned during the same period</u>, the sole obligation to calculate such compensation will not bring the contract within the one-year proscription of the Statute of Frauds.
>
> * * *
>
> Since the measure of defendant's obligation to compensate its employee is fixed within a year, the dangers envisioned by the Statute of Frauds do not come into play. . . . Under such circumstances, we see no reason to conclude that the Statute of Frauds should prevent enforcement of the parties' alleged agreement when all that remains following the termination of the employment relationship is an obligation to pay the employee's compensation which has been earned and fixed within a year.

<u>Cron v. Hargo Fabrics</u>, 91 N.Y.2d 362, 370-71 (N.Y. 1998) (emphasis supplied). <u>See also</u> <u>BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC</u>, 623 F. App'x 7, 13 (2d Cir. 2015) ("This

6

argument is defeated by New York's well-established rule that calculation and tender outside a one-year period of an obligation fixed and earned within the one-year period does not alone bring an agreement within the Statute of Frauds."); Guilbert v. Gardner, 480 F.3d 140, 151-52 (2d Cir. 2007) (holding that an employer's oral pledge to contribute $10,000 annually to plaintiff's pension fund was fixed within one year and, therefore, not unenforceable under the statute of frauds).

Other states have interpreted their statutes of frauds similarly, concluding that a commission that could be earned within the first year of employment is not barred simply because the amount of the commission could not be calculated until after a year. See, e.g., Gulf Solar, Inc. v. Westfall, 447 So.2d 363, 366 (Fla. 2d DCA 1984); Zamelis v. Wingfoot Commercial Tire Sys., LLC, No. C08-1588 RSM, 2009 WL 3484315, at *4 (W.D. Wash. Oct. 26, 2009). In short, an oral contract is not within the scope of the statute of frauds simply because the "ministerial" or "mechanical" act of calculating a commission (or writing a check) may take place outside of one year; provided the amount of the commission is fixed and the employee is capable of earning that commission within a year, the contract is not unenforceable under the statute of frauds. See, e.g., Crowe v.

Harvey Klinger, Inc., No. CV 16-12033-JGD, 2018 WL 6819329, at *9 (D. Mass. Dec. 27, 2018).

The New Hampshire Supreme Court has interpreted the statute of frauds in a similar manner, noting that "[i]f an agreement can be fully performed by either of the parties within the year, <u>and it is so performed</u>, the agreement of the other party is not within the statute, though it may be impossible to perform it within a year." McIntire v. Woodall, 140 N.H. 228, 231 (1995) (emphasis in original) (citations omitted).

Such is the case - at least arguably - here. As an employee at will, Thompson was capable of fully performing the terms of his employment contract within one year. If he was also capable of earning his (alleged) ten percent commission during a one-year period (regardless of when that commission would be calculated and/or paid), then his contract with WTC would not fall within the scope of New Hampshire's statute of frauds. That is a factual question that cannot be resolved at this early juncture.

## Conclusion

WTC has failed to demonstrate that, given the facts alleged in the complaint, Thompson has neglected to plead a viable and

plausible claim for unpaid wages and commissions. Specifically, WTC has not shown that Thompson's wage claim is, as a matter of law, barred by the statute of frauds. Consequently, its motion to dismiss count two of the complaint is necessarily denied.

The grounds on which WTC seeks dismissal of Thompson's wrongful termination claim are less clear. WTC seems to assert that because Thompson has no viable claim for wages and commissions, he necessarily has no claim for wrongful termination. Because WTC's predicate assumption is incorrect, its motion to dismiss count one is also necessarily denied.

In light of the foregoing, defendant's motion to dismiss (document no. 4) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 28, 2019

cc: Sean Robert List, Esq.
Robert W. Kline, Esq.

9